# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

BRIAN HORTON,

         Plaintiff,

 vs.                   9:13-CV-742
                         (GLS/ATB)
ERIC T. SCHNEIDERMAN, *et ano.*,

         Defendants.

_____

BRIAN HORTON, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Article 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary and permanent injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at CM/ECF p.10).[1]

---

[1] The court notes that the complaint is written in two distinctly different handwriting styles. (*Compare* Compl. at 1-4, 9-10 *with* Compl. at 5-8). On page 8, the complaint requests punitive damages of 5.5 million dollars from each defendant per year that plaintiff was in custody pursuant to the civil commitment, and 5.5 million dollars per year in compensatory damages from each defendant.

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Dkt. No. 16). On December 17, 2013, defendants filed a document indicating that plaintiff did not oppose the motion to dismiss, only to alert the court that the motion was "fully submitted."[2] (Dkt. No. 18). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

I. **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the

---

Because many documents, including the complaint are not properly paginated (there are two pages labeled "4" in the complaint for example), the court will cite to the page assigned by the court's electronic filing system, but will not repeat the CM/ECF designation each time.

[2] The failure to respond to a motion to dismiss pursuant to Rule 12(b)(6) cannot, by itself, justify dismissal of the complaint. *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (citations omitted). This court interprets defendants' reply as simply alerting the court that the motion is "fully briefed," and not as any argument that the case should be dismissed because plaintiff did not respond.

2

non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of

record in prior litigation between the same parties).

## II. Background of Relevant Caselaw

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Effective on April 13, 2007, the New York Sex Offender Management and Treatment Act ("SOMTA"), codified in Article 10 of the MHL, authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS-II")*, 785 F. Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[3] *Id.* "Civil management" can include placement and treatment in a secure facility, akin to incarceration as well as other "strict and intensive supervision." SOMTA provides for procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary.

MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *Id.* MHL Section 10.06(k)

---

[3] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)). Treatment of these offenders begins during their incarceration on the criminal charges, but the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

4

mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS-II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a),

(g), and (k)). The hearing must commence withing 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay. MHL §§ 10.06(g), (h). Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k). The statute provides that the trial must begin within 60 days of the probable cause hearing. MHL § 10.07(a).

In *MHLS-1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15. The court in *MHLS-II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions. The court must note that neither[4] court invalidated the section altogether as plaintiff seems to argue. Rather that prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during the pendency of the proceedings.***"[5] *Id.*

---

[4] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch. Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

[5] In making this determination, the court likened the analysis under the MHL to the section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a

6

The court notes that although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[6] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS-III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

### III. Facts and Contentions

Plaintiff alleges that he is serving a "flat" fourteen year sentence of incarceration with a maximum release date of July 29, 2014. (Compl. at 4, 5). Plaintiff alleges that he was scheduled to be released on his conditional release date of December 28, 2012, but held beyond his conditional release, based upon the AG's "restraining order," and was later held pursuant to MHL § 10.06(k), "until the court issued . . . a . . . commitment order. (*Id.* at 4). Plaintiff claims that this conduct was in violation of due process and in violation of the injunctions issued in *MHLS-I*, and *MHLS-II*. (*Id.*) Plaintiff takes an overly simplified view of the court's rulings when he argues that the AG violated the

---

danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)). Probable cause alone will not suffice. *Id.*

[6] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012). The issue was whether MHLS could establish any of the "indicia of membership" required for a membership organization to assert associational standing. *Id.* The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

7

injunctions, as well as the constitution, by applying section 10.06(k).

The plaintiff relies heavily on the decisions in the *MHLS* cases, rather than discussing facts in his own case, and he seeks only damages for the alleged violations. Plaintiff also mentions a case interpreting statutes authorizing pretrial detention as well as a case discussing the commitment of a defendant found not guilty by reason of insanity. (Compl. at 6) (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992); *United States v. Salerno*, 481 U.S. 739 (1987)).

Defendants have submitted to the court documents that were filed in plaintiff's MHL Article 10 proceeding, and they argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the lack of personal involvement and absolute immunity. Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits of which this court takes judicial notice.

Defendants' Exhibit A is the AG's "Petition for Civil Management" filed in plaintiff's case. (Boivin Decl. Ex. A) (Dkt. No. 16-1 at 4-51).[7] Defendants' Exhibit B is the Order to Show Cause for the probable cause hearing, signed on December 21, 2012, and scheduling the probable cause hearing for January 2, 2013 in Syracuse, New York.

---

[7] Defendants have attached documents that were filed in plaintiff's state court commitment proceedings. Some of those documents are labeled as exhibits, making the determination of what is an exhibit in this action a little confusing. As an example, Exhibit A in this case has two Exhibit B documents within it, and there is a separate Exhibit B for this case. While defense counsel identifies what the exhibits are, he does not state the page references in is declaration. Thus, I will cite to the CM/ECF pages associated with defendants' submission.

(Dkt. No. 16-1 at 52-54). Defendants' Exhibit C is the order indicating that plaintiff consented to commitment, and waived the probable cause hearing, the trial on mental abnormality, and the hearing on dangerousness. (Dkt. No. 16-1 at 56-61).

The AG's petition states that plaintiff is a detained sex offender, having been convicted of two counts of Sexual Abuse, First Degree (contact with a person less than 11 years old). (Ex. A) (Dkt. No. 16-1 at 4-5). Plaintiff was sentenced on November 20, 2000, to consecutive sentences of seven years of incarceration on each count. (*Id.* at 10). Plaintiff's conviction was the result of a guilty plea to the charges, in full satisfaction of the original charges of two counts of sodomy, and two counts of endangering the welfare of a child.[8] (*Id.*)

The petition was filed in Oneida County because at that time, plaintiff was incarcerated at Mohawk Correctional Facility, which is in Oneida County. (*Id.* at 4, 9). The petition states that plaintiff's conditional release date was December 29, 2012, and his maximum expiration date is July 29, 2014 (a date that has not been reached yet). (*Id.* at 5). The petition discusses the statutory framework for MHL Article 10, outlining all the procedures necessary for civil commitment. (*Id.* at 5-9). The court will not repeat the facts of the plaintiff's crimes except to say that they were clearly sexual in nature and involved the abuse of young children. (*Id.* at 11). Plaintiff's lengthy criminal history contained previous convictions the sexual abuse of children, beginning in 1987 when plaintiff was 22-years old. (*Id.* at 12-14).

---

[8] The plea was also in satisfaction of some unrelated charges that are not relevant to this case and appear to be unrelated to any sexual crimes. (Def.s' Ex. A) (Dkt. No. 16-1 at 10).

During his incarceration in 2012, plaintiff completed a sex offender program and "aggression replacement therapy," but refused to participate in any alcohol and substance abuse treatment. (*Id.* at 14). The petition notes that plaintiff's community supervision has been "poor," that he had his probation revoked for new convictions, and had "sexually offended while on probation." (*Id.* at 15).

The CRT interviewed plaintiff on December 17 and 18, 2012 pursuant to MHL § 10.05(c).[9] (*Id.*) Dr. Jacob Hadden, Ph.D. interviewed plaintiff by telephone on December 17th and in-person for approximately two hours and twenty minutes on December 18th. (*Id.*) Based upon these interviews and a review of plaintiff's criminal history, his Department of Corrections and Community Supervision ("DOCCS") documents, his OMH documents, and the documents of "various law enforcement agencies," Dr. Hadden found that plaintiff had a "mental abnormality" as defined in MHL § 10.03(i). (*Id.* at 15, 25-33). Dr. Hadden concluded that plaintiff has had a persistent, deviant interest in prepubescent children and would have a difficult time controlling his conduct. (*Id.* at 33). Plaintiff's behavioral controls would be undermined by his substance abuse in the community. (*Id.*) Dr. Hadden found that plaintiff continued to display a significant lack of understanding in reference to his motivation for offending and still held "distorted perceptions" that would support his sexual offending against children, such that it was unlikely that he would "effectively manage the risk in the community over the long term." (*Id.*) Dr. Hadden's report was

---

[9] On December 6, 2012, plaintiff was served with notice that he had been identified as a "possible 'detained sex offender'" under SOMTA, and that his case had been referred to a CRT for evaluation under Article 10. (Def.s' Ex. A) (Dkt. No. 16-1 at 46).

attached to the state court petition. Plaintiff was also served with the results of the CRT evaluation. (Def.'s Ex. A) (Dkt. No. 16-1 at 47). The AG's petition was also served on plaintiff's appointed counsel from MHLS. (*Id.* at 49).

On December 21, 2012, Oneida County Supreme Court Justice Norman I. Siegel signed an order to show cause, scheduling the probable cause hearing for January 2, 2013. The order furter stated that MHLS would be appointed as counsel for plaintiff after a finding of financial eligibility, directed service of the order on MHLS and plaintiff, and ordered that plaintiff remain in custody pending the probable cause hearing pursuant to MHL 10.06(h). (Def.s' Ex. B) (Dkt. No. 16-1 at 53-54).

On January 2, 2013, Supreme Court Justice James C. Tormey issued an order, stating that plaintiff appeared with counsel on the date scheduled for the probable cause hearing,[10] and that plaintiff knowingly and intelligently ***waived*** both the probable cause hearing and the commitment trial. (Def.s' Ex. C) (Dkt. No. 16-1 at 56-60). Justice Tormey's order is very specific regarding all the rights that plaintiff waived, and made it clear that plaintiff waived those rights in consultation with his attorney, consenting "to the Court making a finding as though same was made after a full trial had been held, that Respondent is a detained sex offender who suffers from a mental abnormality as that term is defined by M.H.L. Article 10 . . . ." (*Id.* at 58). In a separate paragraph, Justice Tormey also found that plaintiff knowingly and voluntarily waived his right to a trial to determine dangerousness, "specifically a dispositional hearing, . . . having

---

[10] Justice Tormey specifically noted that there was "good cause" that the hearing was not held within the 72-hour time limit in the MHL because of the "holiday recess." (Def.s' Ex. C) (Dkt. No. 16-1 at 56).

11

consented to the Court making a determination as though same was made after a full hearing had been held, that Respondent is a dangerous sex offender who requires confinement in an Office of Mental Health secure treatment facility. . . ." (*Id.*)  Justice Tormey specifically stated that plaintiff is "likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility," and that these findings were being made by "clear and convincing evidence," the proper standard under the MHL. (*Id.* at 58-59).  Finally, the order informed plaintiff that he would be provided yearly notice of his right to petition the court for discharge pursuant to MHL 10.09, including the right to petition the court in the future for discharge or release under strict and intensive supervision and treatment. (*Id.* at 59-60).

## IV. <u>Absolute Immunity/Personal Involvement</u>

### A. Legal Standards

It is well-settled that prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation

omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate, prosecuting child welfare cases).

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which

13

unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

   B.   **Application**

In this case, plaintiff is seeking damages against two AG defendants, Eric Schneiderman, who was the Attorney General at the time of the petition and Assistant AG James Williams, who signed the petition for civil management. Both of these defendants are entitled to absolute immunity from damages. It is also questionable whether defendant Schneiderman was "personally involved" in any alleged violation, but the court need not engage in a determination of the issue because both defendants are unquestionably entitled to absolute immunity. Thus, the case may be dismissed as against both remaining defendants.[11]

V.   **Due Process**[12]

   A.   **Legal Standards**

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and

---

[11] Plaintiff had originally named the "Attorney General's Office" in addition to the two individual defendants. The complaint was dismissed as to the "Office" defendant by order dated July 31, 2013. (Dkt. No. 5).

[12] Plaintiff also claims that his Fifth Amendment rights were violated by defendants in this action. As defense counsel points out, the Fifth Amendment is applicable to federal actors, not state actors. *Snow v. Village of Chatham*, 84 F. Supp. 2d 322, 326 (N.D.N.Y. 2000) (citing *Brock v. North Carolina*, 344 U.S. 424, 426 (1953)). *See also Ahlers v. Nowicki*, No. 9:12-CV-539, 2014 WL 1056935, at *4 (N.D.N.Y. Mar. 18, 2014). Plaintiff in this case combines the Fifth Amendment with the Fourteenth Amendment "Due Process" clauses. To the extent that plaintiff is attempting to raise the Fifth Amendment as against the state defendants, that claim must be dismissed with prejudice.

14

then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980). The issue is whether he was afforded the appropriate procedural safeguards in conjunction with his civil commitment.

### B. Application

The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases. The procedural protections afforded by the statute have been stated in this report above. The only problem, potentially relevant to plaintiff's case, with the statute thus far has been found in section 10.06(k), which allowed detention of the individual after a probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous. In this case, plaintiff ***waived*** both the probable cause hearing and the trial and consented to confinement as a "dangerous" sex offender. There was no application of 10.06(k) to his case.

The law is clear that an individual may waive both statutory and constitutional rights as long as the waiver is knowing, voluntary, and intelligent. *Murray v. Town of North Hempstead*, 853 F. Supp. 2d 247, 259-60 (E.D.N.Y. 2012) (citations omitted). In this case, Justice Tormey specifically found that plaintiff's waiver, with the advice of counsel, was knowing, voluntary, and intelligent. As stated above, plaintiff consented to a finding of dangerousness and consented to civil confinement at the probable cause

15

hearing. There are no other possible due process claims that plaintiff could assert. In fact, a review of the documents submitted show that all the MHL time limits were followed. The court found good cause to extend the 72-hour time limit for the probable cause hearing. The entire complaint may be dismissed.

## VI. <u>Opportunity to Amend</u>

### A. Legal Standards

In addition to the requirement that pro se complaints must be "liberally construed," the court should generally not dismiss without granting leave to amend at least once. *Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (citing *Cuoco v. Moritsugu*, 222 F.3 99, 112 (2d Cir. 2000)). The court may deny leave to amend when the amendment would be futile. *Id.* (citing *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999)).

### B. Application

Any amendment in this case would be futile. There are no defendants that plaintiff could add that would be subject to a damages action, and it is clear that plaintiff knowingly and voluntarily waived his rights under the statute at the probable cause hearing. No section of the MHL was violated, and as stated above, the court in the *MHLS* cases only enjoined the application of MHL § 10.06(k) to the extent that it allowed detention prior to the commitment trial without an individualized finding of dangerousness. Even though plaintiff waived his rights under the MHL, Justice Tormey specifically found that plaintiff was both a sex offender under the statute and was ***dangerous***, such that he should not be released under any conditions of

supervision. (Def.s' Ex. C).  Thus, any amendment would be futile on the merits, even if plaintiff could find a defendant who was personally involved and who would not have absolute immunity in this case.  Thus, the complaint may be dismissed with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 16) be **GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 24, 2014

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge